[Civ. No. 11313. Fourth Dist., Div. One. Nov. 17, 1972.]

TRUCK INSURANCE EXCHANGE et al., Plaintiffs and Appellants, v. TRANSAMERICA INSURANCE COMPANY et al., Defendants and Respondents.

## COUNSEL

McInnis, Fitzgerald, Rees & Sharkey and Laurence L. Pillsbury for Plaintiffs and Appellants.

Jones, Tellam, Irving & Estes, J. Lawrence Irving and Joel C. Estes for Defendants and Respondents.

## OPINION

**WHELAN, Acting P. J.**—Truck Insurance Exchange (Exchange), a reciprocal insurance exchange, and Anthony E. Sampo, plaintiffs, have appealed from a judgment adverse to their contentions and holding that defendant Transamerica Insurance Company (Transamerica), a corporation, is liable only for excess insurance on a policy written in favor of

V. R. Dennis Construction Company (Dennis), which with its employee Barney Whitfield,[1] is also a defendant.

Sampo was the owner of a dump truck which was being used by Dennis on June 20, 1968, under an agreement by which Dennis hired the truck for a period which included that date. Whitfield, an employee of Dennis, was driving the truck on that date in the course of his employment.

A policy of automobile liability insurance written by Exchange in favor of Sampo covering the truck was in force on that date.

Transamerica had in force on that date a policy of insurance in favor of Dennis which afforded coverage for hired automobiles under comprehensive automobile liability provisions, and hired mobile equipment under comprehensive general liability provisions.

The comprehensive general liability sections of the Transamerica policy contained this provision: "Each of the following is an insured under this insurance to the extent set forth below:

". . . . . . . . . . . . . . . . .

"(5) with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,

"(i) an employee of the named insured while operating any such equipment in the course of his employment . . . ."

The Transamerica policy in its comprehensive automobile liability sections provided coverage as to any sums for which the insured might become legally obligated to pay arising out of the use of any automobile.

The comprehensive automobile liability sections contained the following clause: "With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."

There was not any such provision in the comprehensive general liability sections.

The following definitions contained in the Transamerica policy were declared to apply throughout the policy, including endorsements: "When used in this policy (including endorsements forming a part hereof):

" 'automobile' means a land motor vehicle, trailer or semi-trailer de-

---

[1] Whitfield is misspelled "Whitefield" in some of the pleadings.

signed for travel on public roads (including any machinery or apparatus attached thereto) but does not include mobile equipment.

" .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

" 'mobile equipment' means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment, and geophysical exploration and well servicing equipment . . . ."

There was an endorsement in the policy modifying the insurance afforded by the provisions of the policy relating to comprehensive automobile liability insurance and automobile medical payments insurance, by declaring any mobile equipment as defined in the policy was deemed to be an automobile and not mobile equipment.

On June 20, 1968, at approximately 10:35 a.m., the dump truck driven by Whitfield was involved in a collision with a motor vehicle operated by Bruce N. Tuesley on Interstate 5 between Oceanside and San Clemente. The collision occurred while Whitfield was crossing the southbound lanes of Interstate 5 proceeding from the end of the access road (leading from the state weigh station to the southbound lanes of Interstate 5) to a point on the center divider just south of the barrier fence where the dump truck could cross the center divider and enter the northbound lanes.

The accident occurred on the fourth day that Whitfield had been operating the dump truck. During that period he and other employees of Dennis had been engaged in patching the asphalt on the shoulders and the center divider of Interstate 5. The dump truck was used to carry blacktop from site to site where the patching was being done. Just prior to the accident the dump truck had supplied blacktop for a patch job adjacent to the weigh station. At the time of the accident Whitfield was proceeding to the site of the next patch job near the northbound lanes across from the weigh station.

At night, the dump truck had been left in the vicinity of the highway being worked on. On the morning of the accident, the dump truck had left the vicinity where the work was being done to pick up, and had picked up, blacktop at a plant slightly north of San Juan Capistrano. Whitfield testified he had been using it from the time of the hiring to haul asphalt cement.

At the time of the accident there were four employees of Dennis working on the patch job adjacent to the weigh station, including Clarence Flegal, a foreman.

As a result of the collision, three persons made claims for personal injuries against Whitfield, Dennis and Sampo, which were settled for a total of $12,250 by Exchange when it took over the handling of all three claims shortly after the accident at the request of a representative of Transamerica.

Exchange made demand on Transamerica that it contribute pro-rata to settlement, costs and attorney fees reasonably incurred.

The settlements made by Exchange with all three claimants were reasonable settlements, made without prejudice to any right to proration or contribution that Exchange might have from Transamerica.

Exchange contends the dump truck was a piece of mobile equipment under the definition of the Transamerica policy and as such the insurance afforded was under the comprehensive general liability provisions of that policy and not subject to the declaration of the comprehensive automobile liability provisions that the insurance afforded by those provisions was excess.

That contention is made even though the dump truck might also fall within the definition of "automobile" under the policy definitions, which it clearly does, especially in view of the endorsement stating a piece of mobile equipment is to be deemed an automobile as to the insurance afforded by the comprehensive automobile liability provisions.

We do not pause to consider whether that endorsement eliminates the possibility the dump truck might also be a piece of mobile equipment within the coverage afforded by the comprehensive general liability provisions.

Rather, we pass on to the merits of the alternative arguments made that the policy should be interpreted to bring the dump truck within the coverage afforded by the general liability provision as mobile equipment so as to be primary rather than excess insurance.

It is argued first that the dump truck was obviously a land vehicle designed or maintained for the sole purpose of furnishing mobility to the dumping bed, and that the dumping bed qualifies under the phrase "other road construction or repair equipment."

It is argued next that if the dump truck was not clearly mobile equipment, then the Transamerica policy was ambiguous as to whether the dump truck was mobile equipment, and such ambiguity must be resolved against the insurer under established rules of interpretation. (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914].)

The question must be determined by the test of function and intended use of the dump truck.

The primary intended use of the dump truck was the transportation of material. The mechanical feature by which the bed of the truck became an inclined plane to facilitate and expedite the process of unloading was wholly subordinate to the primary intended use of the vehicle. Clearly it was not designed or maintained for the sole or primary purpose of furnishing mobility to the dumping bed, which was not only a dumping bed but also and primarily a carrying bed.

The feature of mobility found in rollers, scrapers and graders is essential to the use for which they are intended; they grade, roll or scrape only while they are in motion. While a dump truck may unload while in motion, being in motion is not necessary to its unloading. If the unloading mechanism were out of order the truck's primary function could still be carried out; men with shovels could unload it while it was standing or moving. The unloading mechanism of the dump truck could be used only to unload its own burden.

The fact the truck was being used to transport and drop asphalt in the repair or maintenance of a road did not make it mobile equipment within the definition of the policy. Such use does not determine or qualify absolutely the nature of the equipment.

Exchange argues that the trial court's ruling may not be upheld as the resolution of a contested issue of fact, since there is no conflict in the evidence, citing *Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].

It may be upheld, however, as being based upon the only reasonable interpretation of the Transamerica policy in the light of the uncontradicted evidence as to the physical aspects of the truck, its function, its intended

and its actual use. (*Parsons* v. *Bristol Development Co., supra,* 62 Cal.2d 861, 865.)

We hold the provision of the Transamerica policy to be unambiguous that a dump truck is not mobile equipment within the definition of the policy.

Judgment affirmed.

Ault, J., and Cologne, J., concurred.