[No. A082545. First Dist., Div. Four. May 25, 1999.]

ALPINE INSURANCE COMPANY, Plaintiff and Appellant, v. RUSSELL PLANCHON et al., Defendants and Respondents.

**COUNSEL**

Roger, Scott & Helmer and Norman J. Roger for Plaintiff and Appellant.

Law Office of Leslie A. Levy and Leslie A. Levy for Defendants and Respondents.

## OPINION

**POCHÉ, Acting P. J.**—At the heart of this insurer/insured dispute is a standard pickup truck modified with a hydraulic scissors lift, a device that raises and lowers a container called a "bed." The issue presented is whether this vehicle so modified is an "auto" or "mobile equipment" for purposes of a commercial general liability policy. We agree with the trial court's conclusion that the pickup is "mobile equipment," and therefore not an excluded peril.

### BACKGROUND

The vehicle at issue is owned by defendants Russell Planchon, Paul Planchon, and their company, Planchon Roofing & Siding (defendants) and used in the firm's roofing business. The truck was involved in a bizarre accident that led to this litigation.

The circumstances of the underlying accident are not in dispute. On May 26, 1996, the truck was driven to the site where defendants were engaged to replace a tar and gravel roof. Gravel used for the roofing procedure was loaded into the truck's bed and the bed was raised. The weight of the raised, loaded bed was greater than the stability of the truck's position. The bed toppled over, striking a nearby "kettle," the familiar device using burning propane to melt asphalt roofing tar. The spilled tar ignited and burned down the house being roofed. The owners of the destroyed home, the DeVincenzis, sued defendants, who in turn tendered defense of the action to their insurer, Alpine Insurance Company. Alpine accepted the tender with a reservation of rights. Alpine then commenced this action for declaratory relief that it had no duty to defend or indemnify defendants in the DeVincenzi suit.

Alpine issued defendants a commercial general liability policy for bodily injury and property damage. The policy excluded from coverage "bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by or rented or loaned to any insured. Use includes operation and loading and unloading." The policy defined "auto" to mean "a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include mobile equipment." The other relevant definition is as follows:

"Mobile equipment means any of the following types of land vehicles, including any attached machinery or equipment:

"a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

"b. Vehicles maintained for use solely on or next to premises you own or rent;

"c. Vehicles that travel on crawler treads;

"d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

"(1) Power cranes, shovels, loaders, diggers or drills; or

"(2) Road construction or resurfacing equipment such as graders, scrapers, or rollers;

"e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

"(1) Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment; or

"(2) Cherry pickers and similar devices used to raise or lower workers;

"f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

"However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered autos:

"(1) Equipment designed primarily for:

"(a) Snow removal;

"(b) Road maintenance but not construction or resurfacing;

"(c) Street cleaning;

"(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

"(3) Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment."

Alpine moved for summary judgment on the ground that the pickup constituted an "auto" and was therefore excluded from coverage. The motion was denied on the ground that "there is a triable issue of material fact as to whether Defendant's [*sic*] scissor lift truck fits within the definition of 'mobile equipment' as set forth in the Commercial General Liability Policy."

Following a two-day bench trial, the court concluded that the truck "does qualify as 'mobile equipment' . . . the CGL policy does cover this incident and plaintiff is ordered to provide coverage to the defendants pursuant to the terms of its policy." After a formal judgment was entered, Alpine perfected this timely appeal.

### REVIEW

The parties have completely differing thoughts as to the scope of this appeal. Alpine tells us that this appeal involves a single issue of law—whether the pickup comes within the policy's definition of an "auto" or whether it qualifies as "mobile equipment," a question of contract interpretation for our de novo review. Defendants, however, tell us: "Wait a minute. That's not the case we tried below. The only point of contention was resolved in a single finding of fact made by the trial court, and all this Court has to do is determine whether that finding is supported by substantial evidence." There are other points of contention, ranging from Alpine's accusing the trial court of employing an incorrect burden of proof, to defendants' attacking Alpine for raising "red herring" issues. Defendants have the more accurate view of our role on this appeal.

■ It is an established rule of appellate procedure that if there is a finding of fact that is dispositive and necessarily controls the judgment, the presence or absence of findings on other issues is inconsequential. In other words, sometimes a single finding is all that is really important. (E.g., *Leonard* v. *Fallas* (1959) 51 Cal.2d 649, 653 [335 P.2d 665]; *Southern Pac. R. R. Co.* v. *DuFour* (1892) 95 Cal. 615, 619 [30 P. 783]; *Domach* v. *Spencer* (1980) 101 Cal.App.3d 308, 313 [161 Cal.Rptr. 459].) ■ There is such a finding in this case. The trial court found that defendants' truck came within the residuary definition of mobile equipment—"Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transpor-. tation of persons or cargo."[1] If the scissors lift truck qualifies as mobile equipment, it cannot be an auto within the terms of the policy's auto exclusion.

---

[1] This finding was inserted in the judgment: "The primary purposes of the scissor-lift vehicle involved in the incident for which Defendants seek insurance coverage were to provide mobility to the scissor-lift and to allow workmen to elevate roofing materials up to the level of their work site. Accordingly, the subject vehicle qualifies as 'mobile equipment'

Alpine's position has at all times been crystal clear—the pickup is an "auto" and therefore whatever it did or was involved in was outside coverage of the policy. There is an undeniable plausibility to that position. Alpine in effect says: "Look at the photos of the vehicle. It is obviously 'a land motor vehicle . . . designed for travel on the public roads' within the plain meaning of our policy." Alpine appears to want this court to determine, virtually as a matter of law, that defendants' pickup is an "auto" and nothing else.

But this is not the case where a rose is a rose is a rose. Tracking the ebb and flow of the policy language, defendants make out an equally plausible claim that their pickup is not an "auto." What Alpine appears not to appreciate is that the category of "auto" may not immediately be self-obvious, but may have some potential overlap with the category of "mobile equipment." (See *American Star Ins. Co.* v. *Insurance Co. of the West* (1991) 232 Cal.App.3d 1320, 1326 [284 Cal.Rptr. 45]; *Truck Ins. Exch.* v. *Transamerica Ins. Co.* (1972) 28 Cal.App.3d 787, 791 [104 Cal.Rptr. 893].)[2] As will be shown, the definitions are sufficiently imprecise to create the possibility that, depending upon such factors as time, place, and use, the same vehicle could satisfy common understandings of both auto and mobile equipment.[3] A person seeing defendants' truck being driven on the street to a jobsite could easily believe it to be an auto. On the other hand, that same person observing the pickup with the scissors lift extended could just as easily deem it to be mobile equipment.

within the meaning of . . . the insurance policy. Additional facts supporting this decision are set forth with more particularity in this court's DECISION FOLLOWING COURT TRIAL . . . incorporated herein by reference and made a part hereof . . . ." The pertinent facts in the court's decision were set forth in that document as follows: "Defendants specially modified this vehicle to fit the needs of their roofing business. The lift allows workmen to elevate roofing materials up to the level of their work site. This is the primary purpose of this vehicle. It is used to haul building materials in many cases to the job site, however, this is not always true. In some cases, such as this one, a dump truck will bring the materials. In every case, the lift will be used to bring the materials up to the roof. Consequently, the court finds that this vehicle does qualify as 'mobile equipment' for purposes of this policy. [¶] In reaching this decision, the court concluded that the term 'transportation of persons and cargo' refers to linear movement rather than the vertical movement of cargo associated with this lift."

[2]It should be noted that almost all of the California decisions in this area are reduced in precedential value because they either deal with differing policy language (e.g., *Truck Ins. Exch.* v. *Transamerica Ins. Co.*, *supra*, 28 Cal.App.3d 787) or deal with a statutory definition of "special mobile equipment" used for purposes of uninsured motorist coverage and taxation. (Veh. Code, § 575; see, e.g., *McConnell* v. *Underwriters at Lloyds* (1961) 56 Cal.2d 637 [16 Cal.Rptr. 362, 365 P.2d 418]; *Standard Oil Co.* v. *Philbrick* (1941) 47 Cal.App.2d 591 [118 P.2d 497].) In fact, it appears that only *American Star Ins. Co.* v. *Insurance Co. of the West*, *supra*, 232 Cal.App.3d 1320 addresses the same policy language found here.

[3]Perhaps it was recognition of this possibility that a number of older decisions treated self-propelled equipment (typically cranes) as within policy definitions of automobiles while being moved, but not in stationary use. (See *Donahue Constr. Co.* v. *Transport Indem. Co.* (1970) 7 Cal.App.3d 291, 297-299 [86 Cal.Rptr. 632] and decisions cited.)

As for the policy's definitions, just about anything with wheels might qualify as an "auto." The only clear requirement is that an auto be a "vehicle . . . designed for travel on public roads." An auto can include "any attached machinery or equipment." If, however, the vehicle meets the definition of "mobile equipment," it cannot be an auto. A categorical definition of "mobile equipment" is not provided in the policy. It is difficult to discern a common theme among the policy's specified inclusions and exclusions of mobile equipment. All that can be said with certainty is that "mobile equipment" involves "land vehicles." Some vehicles are classified as mobile equipment according to certain functions, usages, features, or geography.[4] Most of the classifications use objective criteria, such as the "designed for use" standard. Some, however, appear to incorporate a measure of subjectivity. At several points the mobile equipment section of the policy speaks of vehicles that are "maintained . . . solely" or "maintained primarily" for various purposes. The clause relied upon by defendants—"Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo"—uses such a test.[5] In contrast to the purpose for which a vehicle was *designed*—an issue on which reviewing courts have been willing to reexamine independently (see *Home Indemnity Co.* v. *King* (1983) 34 Cal.3d 803, 814 [195 Cal.Rptr. 686, 670 P.2d 340]; *Mobilease Corp.* v. *County of Orange* (1974) 42 Cal.App.3d 461, 466-467 [116 Cal.Rptr. 864])—the primary purpose for which a vehicle is *maintained* is more sensibly viewed as calling for either the subjective opinion of the insured that maintains the vehicle or an objective evaluation of how the vehicle is used by the insured. This type of factual inquiry is virtually compelled by the policy's language.[6] Although the authorities in this area are sparse, they demonstrate that whether a vehicle is classified as an

---

[4]"Road construction or resurfacing equipment" is an obvious example of a functional classification. "Cherry pickers and similar devices used to raise or lower workers" is an instance of a definition by usage. "Bulldozers" and "Vehicles that travel on crawler treads" are feature definitions. "Vehicles maintained for use solely on or next to premises [the insured] own or rent" is the obvious geographical classification.

[5]It is a common feature of policies in this area to tailor coverage according to a vehicle's design or use. (See, e.g., *Mercury Ins. Group* v. *Checkerboard Pizza* (1993) 12 Cal.App.4th 495 [15 Cal.Rptr.2d 657] [policy defines automobile in nonowned vehicle exclusion, in terms of design rather than use]; *Farmers Ins. Group* v. *Koberg* (1982) 129 Cal.App.3d 1033 [181 Cal.Rptr. 494] [dune buggy not an automobile, i.e., a "land motor vehicle designed for use principally upon public roads"]; *Gulf Ins. Co.* v. *Edgerly* (1973) 31 Cal.App.3d 334 [107 Cal.Rptr. 246] [minibike was not automobile within policy definition of "equipment which is designed for use principally off public roads"]; *Truck Ins. Exch.* v. *Transamerica Ins. Co.*, *supra*, 28 Cal.App.3d 787 [dump truck was automobile, not mobile equipment "designed or maintained for the sole purpose of affording mobility"].)

[6]And has been in the past. The decisions establishing and applying "in use/not in use" dichotomy (see fn. 3, *ante*) were dealing with policies providing coverage for equipment that " 'shall be deemed an automobile while towed by or carried on an automobile . . . solely for purposes of transportation or while being operated solely for locomotion, but not otherwise

automobile or mobile equipment is ordinarily treated as an issue of fact. (*Ryan* v. *Mike-Ron Corp.* (1964) 226 Cal.App.2d 71, 78 [37 Cal.Rptr. 794]; *Gaumnitz* v. *Indemnity Ins. Co.* (1934) 2 Cal.App.2d 134, 138 [37 P.2d 712].)[7]

This particularized factual inquiry appears to have been the approach adopted by the trial court. (See fn. 1, *ante.*) The court heard from defendant Russell Planchon that, although the pickup sometimes carried miscellaneous pieces of equipment ("nails, mops, shovels, brooms") to jobsites, and sometimes left a jobsite carrying roof debris, the only reason the pickup was taken to jobsites was to provide a platform for use of the scissors lift. Asked by Alpine's attorney "you would only use this truck on a job where you needed to lift materials to a roof level, correct?" Planchon's emphatic reply was "No other purpose, yes." Defendants' attorney made the same point during her examination: "Q. And would you ever use the scissor-lift truck just for transporting materials if it wasn't going to be used for lifting at that same day, at that same designation [*sic*: destination]? A. No." "Q. Was it ever used just to haul the tools generally without any job for lifting involved in that hauling? A. No. No." Mr. Planchon also testified that the truck had to be immobilized before the scissors lift was activated, and that it was immobilized, off the public streets, at the time of the DeVincenzi accident.

Vicente Bermudez, the Planchon company foreman at the DeVincenzi jobsite, corroborated much of Mr. Planchon's testimony. He too told the court that the pickup sometimes carried light hand tools and equipment to a jobsite, and sometimes it towed the "kettle." He too was asked by defendants' attorney "Did you ever put material and take and drive with [the]

---

. . . .' " (See *Donahue Constr. Co.* v. *Transport Indem. Co.*, *supra*, 7 Cal.App.3d 291, 296-297.) Similarly, when general liability policies began providing coverage for mobile equipment it was commonly with the limitation to " ' "a land vehicle . . . designed or maintained for the sole purpose of affording mobility to equipment" ' " of specified types, courts became obliged to decide issues of primary and incidental functions. (E.g., *Truck Ins. Exch.* v. *Transamerica Ins. Co.*, *supra*, 28 Cal.App.3d 787, 790-792.)

[7]This is not to decide, however, that the sole or primary purpose for which a vehicle is designed, maintained, or used cannot be so apparent that it can be characterized as matter of law. The point is easily illustrated by fire trucks. Because they have the power of self-propulsion and are designed for travel on the public roads, they might appear to meet the definition of "auto." But they obviously fall within the same provision relied upon by defendants—"Vehicles . . . maintained primarily for purposes other than the transportation of persons or cargo." A secondary purpose of a hook-and-ladder truck is transportation of persons, i.e., and the firefighters who drive, steer, and man it. The truck's primary purpose, design, and use become clear only when that truck arrives at the scene of a fire. The essence of that massive machinery is the ladder, which can elevate firefighters to heights where high-rise blazes may be fought and lives may be saved. The truck has no real function apart from serving as a mobile platform for that ladder. Or consider the ordinary pumper. It too transports persons and cargo. But not until its hoses are connected and its pumping apparatus is engaged does its core functional identity emerge.

scissor-lift truck with materials in it if you weren't going to use those materials for lifting up to a roof?" Bermudez's answer was "No, we don't." He too testified that the lift would be activated only after the pickup had been immobilized.

We do not agree with Alpine that de novo review is appropriate. This was not an instance where uncontradicted extrinsic evidence was considered to interpret an ambiguous writing, thus permitting independent appellate review. (See *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Truck Ins. Exch.* v. *Transamerica Ins. Co.*, *supra*, 28 Cal.App.3d 787, 792-793.) The critical inquiry here was not the interpretation of Alpine's policy but the application of it. The application of the policy had to await the determination of whether defendants' pickup was an auto or mobile equipment. Making that inquiry would depend upon several subsidiary determinations, including the primary purpose or purposes for which the pickup was maintained, which would in turn require an evaluation of witness testimony.[8] The testimony of Planchon and Bermudez is more than adequate substantial evidence sustaining the trial court's finding that defendants' pickup was maintained primarily for purposes other than the transportation of persons or cargo. Even if that testimony was largely or completely uncontradicted, substantial evidence review is still required because the evidence could support opposing inferences. (E.g., *Winograd* v. *American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632-634 [80 Cal.Rptr.2d 378], and authorities cited.) The finding that defendants' pickup was mobile equipment meant that there was coverage under Alpine's policy. That finding is enough to sustain the judgment. (*Leonard* v. *Fallas*, *supra*, 51 Cal.2d 649, 653.)

Only one other issue requires the briefest of discussion. Alpine asserts that the trial court erroneously assigned it the burden of proving the pickup was not mobile equipment. This is untrue. When the trial court found that Alpine "has failed to meet its burden of proof" it was clearly concluding that Alpine had failed to establish that the pickup was an auto and therefore within the policy's auto exclusion. Proving the applicability of an insurance policy exclusion is the insurer's burden. (E.g., *Aydin Corp.* v. *First State Ins. Co.* (1998) 18 Cal.4th 1183, 1188 [77 Cal.Rptr.2d 537, 959 P.2d 1213].)

---

[8]The trial court signaled this to Alpine when it denied the insurer's motion for summary judgment "because there is a triable issue of material fact as to whether Defendant's [*sic*] scissor lift truck fits within the definition of 'mobile equipment' as set forth in the Commercial General Liability Policy. While the evidence shows that the scissor lift truck was used to transport materials to and from job sites, there is evidence [citing declarations and depositions from Planchon and Bermudez] that the scissor lift truck was used primarily for a purpose other than the transportation of persons and cargo."

The judgment is affirmed.

Reardon, J., and Sepulveda, J., concurred.