[No. B227301. Second Dist., Div. Five. Sept. 24, 2012.]

FEDERAL INSURANCE COMPANY, Plaintiff, Cross-defendant and Appellant, v.
STEADFAST INSURANCE COMPANY, Defendant, Cross-complainant and Appellant;
LIBERTY SURPLUS INSURANCE CORPORATION, Defendant, Cross-defendant and Respondent.

**COUNSEL**

Murchison & Cumming and Edmund G. Farrell III for Plaintiff, Cross-defendant and Appellant.

Selman Breitman, Neil Selman and Meka Moore for Defendant, Cross-complainant and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Patrick Fredette, Jay A. Christofferson and Scott M. Reddie for Defendant, Cross-defendant and Respondent.

## OPINION

## MOSK, J.—

### INTRODUCTION

The United States brought an action against the insureds—the Sterling defendants—for discrimination under the Fair Housing Act (42 U.S.C. § 3601 et seq.) (Sterling action). The primary insurance carriers, Steadfast Insurance Company (Steadfast) and Liberty Surplus Insurance Corporation (Liberty), insured against claims for "wrongful eviction," "wrongful entry," and "invasion of the right of private occupancy." The excess and umbrella insurance carrier, Federal Insurance Company (Federal), insured against those claims and specifically insured against claims for discrimination. At different times in the Sterling action, Steadfast and Federal provided a defense for the Sterling defendants.

Federal sought a determination that it had no duty to defend in the Sterling action and claimed reimbursement from Steadfast and Liberty for defense fees and costs it expended on behalf of the insured defendants in the Sterling action. Steadfast, inter alia, sought reimbursement from Federal and Liberty for the defense fees and costs it expended in that action. The trial court granted summary judgment and summary adjudication against Federal.

We hold that only Federal had a duty to defend in the Sterling action because it issued the only insurance policy that provided coverage for discrimination claims. Neither Steadfast nor Liberty had a duty to defend because their policies did not cover the claims in the Sterling action. We therefore affirm the judgment.

### BACKGROUND

*The Sterling Action*

In 2006, the United States, by the United States Department of Justice (Department of Justice), filed the Sterling action against Mr. Sterling and

others, asserting a single cause of action under, and to enforce, the Fair Housing Act. The United States alleged in the complaint that the Sterling defendants and "their agents and/or employees [had] engaged in a pattern or practice of discrimination on the basis of race, national origin, and familial status in connection with the rental of dwellings owned by [some of the defendants] in violation of the Fair Housing Act."

The discrimination alleged in the complaint in the Sterling action consisted of the following: refusing to rent to non-Koreans[1]; refusing to rent to African-Americans or families with children; creating, maintaining, and perpetuating an environment that was hostile to non-Korean tenants; providing inferior treatment to non-Korean tenants in the terms, conditions, and/or privileges of rentals; misrepresenting the availability of units to non-Koreans, African-Americans, and families with children; making statements and publishing rental notices or advertisements that expressed a preference for Koreans and discrimination against non-Koreans; and making statements or publishing notices or advertisements in connection with the rental of units that expressed discrimination against African-Americans and families with children. In discovery responses in the Sterling action, the Department of Justice asserted that the Sterling defendants' discriminatory practices included entering a tenant's apartment without notice or knocking, and evicting tenants with children.

In its complaint in the Sterling action, the Department of Justice contended that the discriminatory acts violated various provisions of the Fair Housing Act (42 U.S.C. § 3604(a)–(d)). The Department of Justice sought to enjoin the alleged discriminatory conduct and other interference with the exercise of rights under the Fair Housing Act, monetary damages for those who suffered discrimination, and civil penalties.

The Sterling defendants tendered the defense of the Sterling action to Steadfast, Liberty, and Federal. At different times, Federal and Steadfast agreed to provide a defense under a reservation of rights. Federal and Steadfast contended that Liberty also agreed to defend the Sterling defendants, which contention Liberty disputed. In connection with the Sterling action, Federal expended $316,907.02 in defense fees and costs before withdrawing its defense and Steadfast expended $5,285,699.54 in defense fees and costs and paid $1 million in settlement costs. Liberty did not provide a defense or otherwise expend any sums in connection with the matter.

---

[1] Reference to Koreans presumably meant those of Korean ethnicity.

*The Insurance Policies*

    *The Steadfast Policy*

Steadfast issued policy No. SCO539611-00 for the period from December 31, 2002, to March 31, 2004 (the Steadfast policy), insuring some of those named as defendants in the Sterling action.

The Steadfast policy provided for personal injury and advertising injury liability as follows:

"1. Insuring Agreement.

"a. We will pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those 'damages.' However, we will have no duty to defend the insured against any 'suit' seeking 'damages' for 'personal injury' or 'advertising injury' to which this insurance does not apply. . . . [¶] . . . [¶]

"b. This insurance applies to:

"(1) 'Personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you . . . ."

The Steadfast policy defined "personal injury" as "injury, other than 'bodily injury,' arising out of one or more of the following offenses: [¶] . . . [¶]

"c. Any of the following acts if done by or on behalf of an owner, landlord or lessor:

"(1) Wrongful eviction from,

"(2) Wrongful entry into, or

"(3) Invasion of the right or [*sic*] private occupancy of a room, dwelling or premises that a person occupies . . . ."

The Steadfast policy did not include "discrimination" in the definition of "personal injury."

*The Liberty Policies*

Liberty issued policy No. DGL-SF-200816-014 for the period from March 31, 2004, to March 31, 2005; policy No. DGL-SF-200816-024 for the period from March 31, 2005, to March 31, 2006; and policy No. DGL-SF-200826-034 for the period from March 31, 2006, to March 31, 2007 (the Liberty policies). The insureds under the policies included a defendant in the Sterling action.

The Liberty policies provided for personal and advertising injury liability as follows:

"1. Insuring Agreement.

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply. . . .

"b. This insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."

The Liberty policies defined "personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses: [¶] . . . [¶]

"c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor . . . ."

The Liberty policies did not include "discrimination" in the definition of "personal injury."

*The Federal Policies*

Federal issued Chubb commercial excess and umbrella policy No. 7976-72-15 for the period from March 1, 1998, to March 1, 1999, and Chubb commercial excess and umbrella insurance policy No. 7982-81-32 for consecutive periods from December 31, 2002, to March 31, 2007 (the Federal

policies).[2] The insureds under the policies included a defendant in the Sterling action. The policy issued for the period from December 31, 2002, to March 31, 2004, listed the Steadfast policy in its schedule of underlying insurance. The policies issued for the periods from March 31, 2004, to March 31, 2007, listed the Liberty policies covering the same periods in the schedules of underlying insurance.

Federal policy No. 7976-72-15 provided:

"This liability insurance policy features two insuring agreements:

"A. Excess Follow Form Liability coverage; and

"B. Umbrella Liability coverage.

"Excess Follow Form Liability adds excess limits over scheduled underlying coverages.

"Umbrella Liability adds a broadening measure of coverage against many of the gaps in and between the underlying coverages."

The excess insurance in coverage A in the Federal policies from December 31, 2002, to March 31, 2007, provided in part, "Subject to all of the terms and conditions applicable to Excess Follow—Form Coverage A, we will pay on behalf of the **insured**, that part of **loss** to which this coverage applies, which exceeds the applicable **underlying limits**."[3] The Federal policies defined "underlying insurance" as "the coverages for the hazards described in the Schedule Of Underlying Insurance and the next renewal or replacement insurance thereof."[4]

The umbrella insurance in coverage B in the Federal policies from December 31, 2002, to March 31, 2007, provided for advertising injury and personal injury liability coverage as follows:

"Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the **insured, loss** because of liability:

"· imposed by law; or

"· assumed in an **insured contract**;

---

[2] Federal is part of the Chubb Group of Insurance Companies.
[3] Federal policy No. 7976-72-15 contained a similar provision.
[4] Federal policy No. 7976-72-15 defined "underlying insurance" as "the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy."

"for **advertising injury** or **personal injury** to which this coverage applies."[5]

Coverage B in the Federal policies from December 31, 2002, to March 31, 2007, defined "personal injury" to include "C. wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner" and "E. discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex."[6]

With respect to Federal's investigation, defense, and settlement duties, the policies from December 31, 2002, to March 31, 2007, provided in part:

"Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured**:

"· under Excess Follow—Form Coverage A, against a **suit** in connection with **loss** to which such coverage applies, if the applicable **underlying limits** have been exhausted by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits); or

"· under Umbrella Coverage B, against a **suit** to which such coverage applies, even if such **suit** is false, fraudulent or groundless.

"We have no duty to defend any person or organization against any claim or **suit**:

"· to which this insurance does not apply; or

"· if any other insurer has a duty to defend."[7]

*Procedural History*

In its action against Steadfast and Liberty, Federal asserted causes of action for declaratory relief, equitable subrogation, and indemnity. Federal alleged that Steadfast and Liberty issued the insured defendants in the Sterling action primary insurance policies that required a defense in that action, whereas Federal issued the Sterling defendants excess and umbrella insurance policies

---

[5] Federal policy No. 7976-72-15 contained a similar provision.

[6] Federal policy No. 7679-72-15 contained a similar definition of "personal injury."

[7] Federal policy No. 7679-72-15 did not contain a similar provision.

and owed no duty until the Steadfast and Liberty policy limits were exhausted; Steadfast's and Liberty's respective policies defined "personal injury" to include wrongful eviction, wrongful entry, and the invasion of the right of private occupancy; the allegations in the Sterling action gave rise to a potential for personal injury coverage under Steadfast's and Liberty's policies; thus, it was Steadfast's and Liberty's duty to defend the insured defendants in the Sterling action. When Steadfast and Liberty failed to defend the insured defendants in the Sterling action, Federal provided a defense under a reservation of rights. Federal sought from Steadfast and Liberty recovery of the $316,907.02 it expended in defense costs.

Steadfast brought a cross-action against Federal and Liberty for declaratory relief, equitable indemnity, equitable contribution, and equitable subrogation. Steadfast contended that it did not owe insurance coverage to the insured defendants in the Sterling action and that Federal had a duty to defend and indemnify the Sterling defendants. Steadfast asserted that Federal was obligated to indemnify and reimburse Steadfast for amounts it spent in defending and indemnifying the Sterling defendants. Steadfast further alleged that if it had a duty to defend, Liberty also had a duty to defend and that defense costs should be apportioned among the insurers.

Steadfast filed a motion for summary adjudication seeking a determination that Federal and Liberty had a duty to defend the insured defendants in the Sterling action; Steadfast was entitled to judgment on its equitable subrogation and equitable contribution causes of action; and Steadfast did not owe damages to Federal, but Steadfast was entitled to damages from Federal. Steadfast contended that Federal had a duty to defend in the Sterling action because the Sterling action consisted of a single cause of action for discrimination; Federal's policies defined "personal injury" as including "discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex"; and Steadfast's policy did not provide coverage for discrimination claims. With respect to Liberty's duty to defend, Steadfast argued that it and Liberty had issued insurance policies with nearly identical terms, and thus, if Liberty did not have a duty to defend in the Sterling action, then Steadfast also did not have a duty to defend, but, if Steadfast had a duty to defend in the Sterling action, then Liberty also had a duty to defend. If all three insurers had a duty to defend, Steadfast argued, then the trial court should apportion the defense costs among the insurers taking into consideration each insurer's policy limits and the period for which each insurer provided coverage.

Federal filed a motion for summary judgment. Federal asserted that the government's contentions that the Sterling defendants created a hostile environment for some of their tenants amounted to a claim of constructive

eviction, thus falling under the coverages for wrongful eviction, wrongful entry, and invasion of the right of private occupancy in the Steadfast and Liberty policies. Accordingly, Federal argued, as primary insurers, Steadfast and Liberty had a duty to defend in the Sterling action, and Federal did not have a duty to defend under its excess coverage because neither Steadfast nor Liberty had informed Federal that Steadfast or Liberty had exhausted its policy limits. Federal contended that it did not have a duty to defend under its umbrella coverage because its duty to defend did not attach where, as here, another insurer had a duty to defend. Liberty also filed a motion for summary judgment or, in the alternative, summary adjudication, contending that it had no duty to provide a defense in the Sterling action because the Sterling action concerned discrimination claims, its policies did not provide discrimination coverage, and there was no coverage for an intentional act.

The trial court ruled that neither Steadfast nor Liberty had a duty to defend in the Sterling action because the complaint in that action did not create a potential for covered liability as all allegations concerned discrimination and no allegations concerned wrongful eviction, wrongful entry, or invasion of the right to private occupancy. The trial court reasoned that the action by the United States against the Sterling defendants was specifically framed under the statutory provisions of 42 United States Code section 3604 and Federal failed to show how claims for wrongful eviction or invasion of the right of private occupancy were potential claims the United States could have asserted in the Sterling action. Accordingly, the trial court denied Federal's motion for summary judgment. It granted Liberty's motion for summary judgment and found moot Liberty's motion for summary adjudication. The trial court partially granted Steadfast's motion for summary adjudication. The trial court held that Federal and not Steadfast or Liberty had a duty to defend in the Sterling action, that Steadfast was entitled to judgment against Federal on its equitable subrogation and equitable contribution causes of action, and that Steadfast not only had no obligation to Federal but was entitled to damages from Federal. The trial court found moot Steadfast's claims that Liberty had a duty to defend in the Sterling action and that Steadfast was entitled to damages from Liberty. As for damages, the trial court found a triable issue of fact concerning the amount Steadfast expended in defending the Sterling defendants. Pursuant to a stipulated judgment, the parties agreed that Steadfast expended $5,285,699.54 in defense fees and costs and paid $1 million to settle the Sterling action.

## DISCUSSION

Federal contends on appeal that the trial court erred in denying its motion for summary judgment, partially granting Steadfast's motion for summary adjudication, and granting Liberty's motion for summary judgment. Federal argues that the housing discrimination allegations in the Sterling action, in

effect, constituted claims for wrongful eviction, wrongful entry, and invasion of the right of private occupancy and thus gave rise to a potential for coverage under the Steadfast and Liberty policies. Accordingly, Federal reasons, because other insurers had a duty to defend, it did not have a duty to defend under the terms of its excess and umbrella policies. Because Federal was the only insurer that issued insurance for discrimination claims and the Sterling action solely concerned housing discrimination, we affirm the judgment.[8]

## I. Standard of Review and Rule of Interpretation

■ " 'When determining whether a particular policy provides a potential for coverage . . . , we are guided by the principle that interpretation of an insurance policy is a question of law. [Citation.]' [Citation.]" (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390 [33 Cal.Rptr.3d 562, 118 P.3d 589].) " 'We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.' [Citations.]" (*Ibid.*)

■ "In reviewing de novo a superior court's summary adjudication order in a dispute over the interpretation of the provisions of a policy of insurance, the reviewing court applies settled rules governing the interpretation of insurance contracts . . . . [¶] ' "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." [Citations.] "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." [Citation.] "Such intent is to be inferred, if possible, solely from the written provisions of the contract." [Citation.] "If contractual language is clear and explicit, it governs." [Citation.]' [Citation.]" (*Powerine Oil Co., Inc. v. Superior Court, supra*, 37 Cal.4th at p. 390; accord, *TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27 [50 Cal.Rptr.3d 597, 145 P.3d 472].) Issues regarding the application of a statute to undisputed facts are reviewed de novo. (*Gonzalez v. County of Los Angeles* (2004) 122 Cal.App.4th 1124, 1129 [19 Cal.Rptr.3d 381].)

---

[8] Because we affirm the trial court's rulings, we need not address Steadfast's cross-appeal in which it argued that if we reverse the trial court's ruling in Steadfast's favor, then we also must reverse the trial court's ruling in Liberty's favor, as both insurers issued virtually identical insurance policies, and that if we find that Steadfast and Liberty had a duty to defend in the Sterling action, then we should find that Federal also had a duty to defend.

## II. *Application of Relevant Principles Concerning Insurance Coverage*

■ "Primary insurance provides coverage immediately upon the occurrence of a loss or an event giving rise to liability, while excess insurance provides coverage only upon the exhaustion of specified primary insurance. [Citation.] Insurance policies sometimes include both excess and umbrella insurance. Umbrella insurance provides coverage for claims that are not covered by the underlying primary insurance. [Citation.] An umbrella insurer 'drops down' to provide primary coverage in those circumstances. [Citations.] Thus, a policy that provides both excess and umbrella insurance provides both excess and primary coverage." (*Legacy Vulcan Corp. v. Superior Court* (2010) 185 Cal.App.4th 677, 689 [110 Cal.Rptr.3d 795]; see *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 812–813 [180 Cal.Rptr. 628, 640 P.2d 764]; 2 Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2011) ¶ 8:210, p. 8-52 (rev. # 1, 2011) ["[U]mbrella coverage may 'fill any gaps in coverage left open by the primary coverage in addition to increasing the total possible recovery by the insured.' [Citations.]"].)

■ In determining whether an insurer has a duty to defend under the terms of its policy, we look both to the allegations in the complaint and to the extrinsic facts known to the insurer that suggest that a claim might be covered. (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654 [31 Cal.Rptr.3d 147, 115 P.3d 460].) The duty to defend exists when a third party complaint can fairly be amended to state a covered liability based on the facts alleged, reasonably inferable, or otherwise known. (*Ibid.*) If, as a matter of law, however, there is no potential for coverage based on the allegations in the complaint or the extrinsic facts known to the insurer, then there is no duty to defend. (*Id.* at p. 655.) This is so because the duty to defend is contractual, and the insurer did not contract to defend claims that were not even potentially covered. (*Ibid.*)

### A. *Intentional Acts*

■ Liberty contends that the claims in the Sterling action are excluded from coverage under the terms of its policies and by Insurance Code section 533 (section 533) because the acts alleged in the Sterling action were intentional and willful. Liberty's policies excluded from coverage personal and advertising injuries that were "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.' " Section 533 provides, "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." The insurance policy exclusion and section 533 do not

apply here, however, because the Sterling action complaint included allegations that the Sterling defendants could be found liable on a theory of vicarious liability as well as for their own acts. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 305, fn. 9 [48 Cal.Rptr.2d 510, 907 P.2d 358] ["Neither Insurance Code section 533 nor related policy exclusions for intentionally caused injury or damage preclude a California insurer from indemnifying an employer held vicariously liable for an employee's willful acts. (*Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 83–84 [286 P.2d 816]; *Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 1000–1001 [216 Cal.Rptr. 796].)"]; see *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 512 [78 Cal.Rptr.2d 142]; 2 Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶¶ 7:315, 7:320, pp. 7A-124, 7A-126 (rev. # 1, 2011)]; 1 Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2011) ¶ 3:491, p. 3-56 (rev. # 1, 2011); see also 2 Croskey et al., *supra*, ¶ 7:531, p. 7B-15 (rev. # 1, 2011) ["Ins.C. §533 prohibits indemnification, not defense, of intentional tort claims [citation]. [¶] Whether the insurer must defend a complaint charging intentional misconduct by the insured depends on whether the acts could *potentially* give rise to liability for negligence [citation]."].)

### B. *Discrimination Under the Fair Housing Act*

The United States may bring an action under the Fair Housing Act "[w]henever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil action in any appropriate United States district court." (42 U.S.C. § 3614(a).) A " '[d]iscriminatory housing practice' " under the Fair Housing Act is "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." (42 U.S.C. § 3602(f).) The Department of Justice brought the Sterling action under 42 United States Code section 3604, part of the Fair Housing Act, which provides, in relevant part, that it is unlawful:

"(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

"(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

"(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

"(d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available."

The Federal, Steadfast, and Liberty policies all provided coverage for personal injury arising from wrongful eviction, wrongful entry, and invasion of the right of private occupancy. The Federal policy also provided coverage for discrimination claims based on a person's age, color, national origin, race, religion, or sex. Neither the Steadfast nor Liberty policies contained such explicit coverage for discrimination claims.

Federal contends that the complaint and discovery in the Sterling action implicate personal injury coverage for wrongful eviction, wrongful entry, and invasion of the right of private occupancy under the Steadfast and Liberty policies because the claims in that action arose in the context of a landlord-tenant relationship; the gist of the alleged misconduct, inter alia, was that the defendants interfered with the tenants' use and enjoyment of their property interests through the defendants' discrimination; and discovery showed that the vast majority of aggrieved persons in the Sterling action moved out of the defendants' properties. Because Sterling and Liberty had a duty to defend, Federal argues, it did not have a duty to defend under the provision of its policies that provided for no duty to defend "if any other insurer has a duty to defend."

■ The United States's jurisdiction under 42 United States Code section 3614(a) is the enforcement of the antidiscrimination provisions of the Fair Housing Act. That jurisdiction does not extend to landlord-tenant disputes in the form of wrongful eviction, wrongful entry, or invasion of the right of private occupancy that are not based on housing discrimination under the Fair Housing Act. Although the discrimination alleged in the Sterling action may have been based in part on acts that might involve wrongful evictions, wrongful entries, or invasions of the right of private occupancy, the gravamen of the action itself was solely for housing discrimination under the Fair Housing Act. The Sterling action cannot be construed as asserting common law theories of wrongful eviction, wrongful entry, or invasion of the right of private occupancy. Only the tenant can claim wrongful eviction, wrongful entry, or invasion of the right of private occupancy.

Relying on *Martin Marietta Corp. v. Insurance Co. of North America* (1995) 40 Cal.App.4th 1113 [47 Cal.Rptr.2d 670] (*Martin Marietta*), Federal contended at oral argument that a determination of potential coverage under the Steadfast and Liberty policies should not turn on whether the Sterling action plaintiff was the United States government or one of the alleged victims of housing discrimination. Federal's argument appears to be that Steadfast and Liberty had a duty to defend if the Sterling action complaint contained allegations of fact on which a nonparty victim of the Sterling defendants' alleged housing discrimination could have based a common law action that was covered or potentially covered by the Steadfast and Liberty policies. We do not believe the language in *Martin Marietta* is controlling in this case.

*Martin Marietta, supra*, 40 Cal.App.4th 1113, concerned an insured's claim for insurance coverage for actions to remediate groundwater and other contamination brought against it by federal and state entities under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. § 9601 et seq.); the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 et seq.); and similar statutes and theories. (*Martin Marietta, supra*, 40 Cal.App.4th at pp. 1117–1118.) The court reversed a grant of summary adjudication in the insurance company's favor, holding that the government actions were based in part on trespass and nuisance and therefore had the potential for coverage as "wrongful entry" or " 'other invasion of the right of private occupancy.' " (*Id.* at pp. 1118, 1131–1133, 1135–1136.)

As to coverage for the government claims against Martin Marietta as " 'invasion[s] of the right of private occupancy,' " the insurance company argued that there was no coverage because "occupancy" was an " 'incident of ownership and connote[d] actual use' " and "the government did not occupy groundwater." (*Martin Marietta, supra*, 40 Cal.App.4th at p. 1133.) The insurance company characterized the government claims as " 'seeking to protect the public's undivided, non-exclusive residual interest in groundwa- ter.' " (*Ibid.*) The insurance company further argued that the insurance policy's use of the word "private" excluded coverage because it meant that the party claiming the right to private occupancy must have had " 'legal, exclusive, interest in the premises,' something distinct from the government's interests in groundwater." (*Ibid.*) The court stated that the insurance company had not established by undisputed facts that the government sought to enforce only a public or residual interest in groundwater. (*Ibid.*) Instead, the court observed, the undisputed facts indicated that the government claims included allegations that pollutants emanating from Martin Marietta had "contaminated the water wells and groundwater on land owned by individuals, businesses, and, perhaps, governmental entities." (*Id.* at pp. 1133–1134.) The court construed the insurance company's argument as essentially arguing that "even

if a claim would be covered if brought by an individual property owner, the claim is not covered if it is brought by the government." (*Id.* at p. 1134.) The court rejected that argument, holding that the policy's language did not support the argument and a reasonable insured would not have so understood the policy. (*Ibid.*) The court concluded that "it is not the identity of the plaintiff which determines coverage, but the allegations of the complaint." (*Ibid.*; see 4 New Appleman Insurance Law Practice Guide (2012 ed.) § 43.10[2], p. 43-14 ["Perhaps the biggest area of controversy under [coverage for wrongful entry or eviction] has been in pollution claims."].)

The reference in *Martin Marietta, supra,* 40 Cal.App.4th at page 1134, to the idea that it should not matter who is the plaintiff for purposes of insurance coverage is not applicable here. Coverage in this action does not turn on who is the plaintiff. Rather the lack of coverage under the Steadfast and Liberty policies is based on the allegations in this case that are for discrimination under the Federal Housing Act. The contamination alleged in *Martin Marietta* necessarily involved a trespass or nuisance, which had the potential to be a "wrongful entry" or "other invasion of the right of private occupancy" as provided in the policy. Claims under the Fair Housing Act do not necessarily involve common law claims. The Federal Housing Act claims are for discrimination—common law claims are not inherently the basis of those Federal Housing Act claims. (See *Boston Housing Authority v. Atlanta Internat. Ins. Co.* (D.Mass. 1992) 781 F.Supp. 80, 84 ["Racial discrimination does not constitute an act of trespass and cannot be considered an 'invasion of the right of private occupancy.' "].)

██   Even if a claim by a tenant or potential tenant under 42 United States Code section 3613 or 3614(c) might potentially be covered by the Steadfast and Liberty policies,[9] the claim by the United States is not. The United States had no right of occupancy. It was not a victim of any violation of property rights. Although one remedy sought was damages for persons aggrieved by discrimination, it sought only to enforce an antidiscrimination statute to deal with a "pattern or practice" of discrimination. (42 U.S.C. § 3614(a).) It could

---

[9] There are conflicting authorities over whether the phrase " 'wrongful entry or eviction, or other invasion of the right of private occupancy' " covers housing discrimination claims by private individuals. (See Schwemm, Housing Discrimination Law and Litigation (2012) § 12B:8, p. 12B-37; see also Rice, *Insurance Contracts and Judicial Decisions Over Whether Insurers Must Defend Insureds That Violate Constitutional and Civil Rights: An Historical and Empirical Review of Federal and State Court Declaratory Judgments 1900–2000* (2000) 35 Tort & Ins. L.J. 995, 1034–141; *Rosenberg Diamond Development Corp. v. Wausau Ins. Co.* (S.D.N.Y. 2004) 326 F.Supp.2d 473.)

not include in or amend its complaint to add causes of action based on common law theories of wrongful eviction, wrongful entry, or invasion of the right of private occupancy. An individual plaintiff must show injury in fact (*San Pedro Hotel Co. v. City of Los Angeles* (9th Cir. 1998) 159 F.3d 470, 475), whereas the United States has to show a "pattern or practice"—more than an isolated or sporadic act—of discrimination (*U.S. v. Balistrieri* (7th Cir. 1992) 981 F.2d 916, 929) or that a group of persons has been denied rights and such denial raises "an issue of general public importance." (42 U.S.C. § 3614(a).)

That a nonparty alleged victim of housing discrimination could have brought a separate common law action against the Sterling defendants based on the factual allegations in the Sterling action complaint that might have been covered under the Steadfast and Liberty policies does not establish potential coverage under those policies for the Fair Housing Act discrimination allegations in the Sterling action, brought by the United States to enforce a federal statute concerning "a pattern or practice" of housing discrimination. (42 U.S.C. § 3614(a).)

Accordingly, because there was no coverage or potential for coverage under the Steadfast or Liberty policies for violations of the Fair Housing Act based on the allegations in the Sterling action complaint or the extrinsic facts known to the insurers, neither Steadfast nor Liberty had a duty to defend in that action. (*Scottsdale Ins. Co. v. MV Transportation, supra*, 36 Cal.4th at p. 655.) Federal, however, did have a duty to defend the insureds. Because the Sterling action was based on discrimination and only the Federal policies, and not the Steadfast or Liberty policies, provided coverage for discrimination claims, the umbrella coverage in the Federal policies " 'dropp[ed] down' " to fill the gap in the Steadfast and Liberty policies and provide primary coverage in the Sterling action. (*Legacy Vulcan Corp. v. Superior Court, supra*, 185 Cal.App.4th at p. 689.)

## DISPOSITION

The judgment is affirmed. Steadfast and Liberty shall recover their costs on appeal.

Armstrong, Acting P. J., and Kriegler, J., concurred.

The petition of appellant Federal Insurance Company for review by the Supreme Court was denied December 19, 2012, S206466.