Filed 1/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| AMERICAN STATES INSURANCE COMPANY, <br><br> Plaintiff, Cross-defendant, and Appellant, <br><br> v. <br><br> TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Defendant, Cross-complainant, and Respondent; <br><br> IRAIS GOMEZ et al., <br><br> Cross-defendants and Appellants. | B243003 <br><br> (Los Angeles County <br> Super. Ct. No. BC459824) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Scheper, Judge.  Reversed and remanded with directions.

Edwards & Hunter, Richard P. Edwards, for Plaintiff, Cross-defendant, and Appellant American States Insurance Company.

Gary A. Dordick, Mark J. Bloom, for Cross-defendants and Appellants Irais Gomez, Esmeragdo Gomez, and Royal Catering Company.

Cates Peterson, Mark D. Peterson; Greines, Martin, Stein & Richland, Robert A. Olson and Edward L. Xanders, for Defendant, Cross-complainant, and Respondent Travelers Property Casualty Company of America.

## INTRODUCTION

One of the operators of a leased food truck was burned inside the truck by oil from a deep fryer that splashed on her. The insurers for the lessor dispute with one another coverage. The automobile insurer claims that the injury should be covered under the commercial general liability policy that, although excluding coverage for injuries arising out of the use of automobiles,[1] covers "mobile equipment," defined as vehicles used for a primary purpose other than transporting persons or cargo. The commercial general liability insurer asserts that the primary purpose of the food truck was to transport persons and cargo so that it is not within the mobile equipment exception to the auto exclusion. In reversing the judgment, we hold that the primary purpose of the food truck was not to transport persons or cargo, and therefore the commercial general liability policy coverage for products liability applied in this case.

## BACKGROUND

### A.     The Gomezes' Food Truck

Royal Catering Company (Royal) owned a fleet of food trucks. It leased its trucks to operators who drove from site to site selling food. Royal leased one of these trucks to Esmeragdo Gomez, who, along with his wife Irais Gomez, operated the truck. The Gomezes' food truck had only two seats and two seatbelts. The truck was not equipped to transport persons other than a driver and a cook. Each day, Mr. Gomez returned the food truck to Royal. Royal washed and maintained the truck and repaired it as necessary.

The Gomezes' food truck was equipped with a specially designed deep fryer, grill, steam table, oven, refrigerator, and coffee maker. That equipment was built into the truck and was not designed to be used apart from the truck. Royal provided the Gomezes with the food supplies, pots, pans, and cooking equipment they used to serve their customers.

---

[1]     Referred to as "autos."

One side of the Gomezes' food truck was constructed so that a person inside the truck could serve food to customers outside the truck—that side of the truck opened, and there was a folding shelf attached to the outside of the truck.

On a typical day, Mr. Gomez would begin his route at 5:00 a.m. and complete it at 1:00 p.m., following the same route and making 12 or 13 stops. When the Gomezes' food truck was not "under way," it was parked while food was prepared or sold to customers. Most of the food was prepared before the Gomezes left the Royal parking lot.

**B.      The Accident and the Gomez Action**

On the day of the accident, Mr. Gomez was driving the Gomezes' food truck. A guest sat in the truck's passenger seat, and Mrs. Gomez stood in the rear of the truck. At an intersection, Mr. Gomez swerved to avoid an approaching truck. Mr. Gomez's evasive action failed to avoid a collision. Just prior to the collision, hot oil splashed on and burned Mrs. Gomez.

The Gomezes and the passenger in their truck brought an action (the Gomez action) against Royal and others for injuries sustained in connection with the accident. In their action, the Gomezes asserted causes of action against Royal for products liability (negligence), products liability (design defect), negligent infliction of emotional distress, and property damage. Mr. Gomez also asserted a cause of action against Royal for loss of consortium.

Royal tendered the Gomez action to American States Insurance Company (American States), which had issued automobile (American States Auto Policy) and excess automobile insurance policies to Royal. American States agreed to provide a defense under a reservation of rights. Royal and American States tendered the Gomez action to Travelers Property and Casualty Company of America (Travelers), which had issued to Royal commercial general liability (Travelers Primary CGL Policy) and excess-umbrella general liability policies. Travelers declined to provide a defense. American States negotiated with the Gomezes to settle their claims against Royal in the Gomez

3

action.[2]  Travelers declined to participate in the settlement of the Gomez action. American States paid $500,000 to the Gomezes to settle all possible claims against Royal under American States's Auto Policy.  Under the settlement, the Gomezes could pursue their products liability claims against Royal, but only to the extent such claims were covered by Travelers's insurance policies.

American States, Royal, and the Gomezes submitted the Gomez action to binding arbitration.  The arbitration concerned only Royal's liability on a products liability theory—i.e., that Royal provided a defective deep fryer basket, which caused the hot oil to spill on Mrs. Gomez.  Royal stipulated to liability on a products liability theory, but challenged the amount of damages and the apportionment of fault.  The arbitration award stated, in part, "The burning oil spilled out of the deep fryer container because Defendant [in that matter] Royal . . . , the commercial lessor, had supplied the subject truck with the improper fryer baskets, which blocked the latching mechanism from closing."

Regarding responsibility for the accident that caused Mrs. Gomez's burn injuries, the Arbitrator found:  "1.  That responsibility for the subject vehicular accident lies with Raul Carrillo's [the driver of the truck that collided with the Gomezes' food truck] failure to yield the right-of-way to Esmeragdo Gomez; [¶]  2.  That with regard to Irais Gomez's burn injuries, there were several concurring causes, which proximately caused same.  These included Mr. Carrillo's negligence; the admitted negligence of Royal Catering Truck, Inc. in failing to provide the proper fryer basket, which was the most direct cause of Ms. Gomez's unfortunate injuries; the negligence of Esmeragdo Gomez in allowing his wife, Irais Gomez to remain, unrestrained, in the rear/kitchen part of the catering truck; and Mrs. Gomez herself in failing to take proper precautions for her own safety. [¶]  These liability proportions for Mrs. Gomez's injuries are assigned as follows:  [¶]  1. To Raul Carillo:  20%;  [¶]  2.  To Royal Catering Trucks, Inc.:  40%;  [¶]  3.  To Esmeragdo Gomez:  25%  [¶]  4.  To Irais Gomez:  15%."

---

[2]     The Gomezes separately settled their claims against the other defendants in the Gomez action.

Based on the arbitrator's award, by stipulation, a judgment was entered against Royal on Mr. Gomez's loss of consortium claim and Mrs. Gomez's products liability claims in the total amount of $2,428,577.34, including costs. The Gomezes' remaining causes of action were dismissed.

## C. The Litigation

American States brought an action against Travelers, and Travelers cross-complained against American States; both insurance companies sought to establish Royal's coverage under the other company's insurance policies.

### 1. *American States's Complaint and Travelers's Cross-complaint*

American States brought an action against Travelers seeking a declaration that Travelers had a duty to defend Royal in the Gomez action under the Travelers primary and excess-umbrella general liability policies and for equitable contribution and equitable subrogation/indemnity for American States's payment of the defense costs and settlement in the Gomez action. Travelers cross-complained against American States, the Gomezes, and Royal seeking declarations that Travelers had no duty to defend or indemnify Royal in the Gomez action under either the Travelers Primary CGL Policy or the Travelers excess-umbrella general liability policy, that America States had a duty to defend and indemnify Royal in the Gomez action under the American States Auto Policy, and that American States had a duty to indemnify Royal in the Gomez action under the American States excess auto policy before Travelers had any duty to do so under the Travelers excess-umbrella general liability policy[3].

---

[3] This last claim was the subject of Traveler's seventh cause of action. Travelers's summary adjudication motion, discussed *post*, did not address its seventh cause of action, and stated that the trial court could dismiss the cause of action without prejudice if the trial court granted Travelers's motion.

## 2. American States's Summary Judgment Motion and Travelers's Summary Adjudication Motion

American States moved for summary judgment, arguing that Travelers had a duty to defend and indemnify Royal in the Gomez action because the Gomezes' food truck was "mobile equipment" and thus not subject to the auto exclusion in the Travelers Primary CGL Policy; the Gomezes' food truck and the equipment installed in the truck—i.e., the deep fryer basket—was a "product" covered by the Travelers Primary CGL Policy and excluded from coverage under the American States Auto Policy; and Travelers had a duty to defend Royal under the Travelers excess-umbrella policy if there was no coverage under the Travelers Primary CGL Policy or the American States Auto Policy. Travelers moved for summary adjudication, arguing that it did not have a duty to defend or indemnify Royal in the Gomez action under the Travelers Primary CGL Policy because the auto exclusion in its policy precluded coverage; it did not have a duty to defend Royal in the Gomez action under the Travelers excess-umbrella CGL policy because American States had a duty to defend Royal under the America States Auto Policy; it did not have a duty to indemnify Royal in the Gomez action under the Travelers excess-umbrella CGL policy because American States had not exhausted the limits of the American States Auto Policy in settling the Gomez action; and American States had the duty to defend and indemnify Royal in the Gomez action under the American States Auto Policy because the Gomezes' food truck, a covered auto under that policy, was in an accident.

At oral argument on their respective summary judgment and summary adjudication motions, American States and Travelers agreed that there were no facts in dispute and that the only issue for the trial court to decide was the proper interpretation of the relevant insurance policies. American States and Travelers also stipulated in writing that certain facts in their respective separate statements of undisputed facts were true. Counsel for the Gomezes and Royal signed the stipulation concerning the facts in Travelers's separate statement, but did not sign the stipulation concerning the facts in

6

American States's separate statement. The Gomezes and Royal unsuccessfully attempted to join in American States's summary judgment motion.

### 3. Summary Judgment and Appeal

The trial court granted Travelers's motion for summary adjudication and denied American States's motion for summary judgment. It held that the Gomezes' food truck was an "auto" and not "mobile equipment," reasoning that "the whole point . . . of this endeavor is to move food and other items to places where people are waiting to buy them" and that food was the "cargo" the Gomezes' food truck transported. The trial court dismissed Travelers's remaining cause of action that was not part of Travelers's summary adjudication motion, and entered judgment for Travelers. American States, as well as Royal and the Gomezes, appealed.[4]

## D. The Insurance Policies[5]

1. The *Travelers Commercial General Liability Policy* (Policy No. Y-630-1397C542-TIL-07) (the Travelers Primary CGL Policy)

Section I of the Travelers Primary CGL Policy contained coverage for bodily injury and property damage liability in pertinent part as follows:

---

[4] The Gomezes and Royal join in American States's arguments on appeal. Although the trial court denied the Gomezes' and Royal's motion to join to American States's summary judgment motion, it apparently permitted them to join American States's opposition to Traveler's summary adjudication motion.

[5] Because Travelers did not claim in its summary adjudication motion that American States had a duty to indemnify Royal in the Gomez action under the American States excess auto policy (the subject of Travelers's seventh cause of action), and we hold below that there was coverage under Travelers's primary commercial general liability policy, we do not set forth the terms either of American State's excess auto policy or Travelers's excess-umbrella general liability policy.

"1.    Insuring Agreement

"a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages. . . .

"[¶]—[¶]

"b.    This insurance applies to 'bodily injury' and 'property damage' only if:

"(1)    The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

"(2)    The 'bodily injury' or 'property damage' occurs during the policy period . . . .

"[¶]—[¶]

"2.    Exclusions

"This insurance does not apply to:

"[¶]-[¶]

"g.    Aircraft, Auto Or Watercraft

"'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and 'loading or unloading.'

"This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft that is owned or operated by or rented or loaned to any insured."

"Section V – Definitions" of the Travelers Primary Insurance Policy contained the following definitions:

8

"2.     'Auto' means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But 'auto' does not include 'mobile equipment.'

"[¶]—[¶]

"12.     'Mobile equipment' means any of the following types of land vehicles, including any attached machinery or equipment:

"a.     Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

"b.     Vehicles maintained for use solely on or next to premises you own or rent;

"c.     Vehicles that travel on crawler treads;

"d.     Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

"(1)     Power cranes, shovels, loaders, diggers or drills; or

"(2)     Road construction or resurfacing equipment such as graders, scrapers or rollers;

"e.     Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

"(1)     Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

"(2)     Cherry pickers and similar devices used to raise or lower workers;

"f.     Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

"However, self-propelled vehicles with the following types of permanently attached equipment are not 'mobile equipment' but will be considered 'autos':

"(1)     Equipment designed primarily for:

"(a)     Snow removal;

"(b)     Road maintenance, but not construction or resurfacing; or

"(c)    Street cleaning;

"(2)    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

"(3)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment."

2.    *The American States Business Auto Policy* (Policy No. 01-CG-131357-6)
(the American States Auto Policy)

Section II of the American States Auto Policy contained liability coverage in pertinent part as follows:

"A.    Coverage

"We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"

"[¶]—[¶]

"We have the right and duty to defend any 'insured' against a 'suit' asking for such damages . . . ."

Under the American States Auto Policy, "auto" was defined as:

"a.    Any land motor vehicle, 'trailer' or semitrailer designed for travel on public roads; or

"b.    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

"However, 'auto' does not include 'mobile equipment.'"

The American States Auto Policy contained the following exclusion:

"Completed Operations

"'Bodily injury' or 'property damage' arising out of your work after that work has been completed or abandoned.

10

"In this exclusion, your work means:

"a.    Work or operations performed by you or on your behalf; and

"b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a. or b. above.

"Your work will be deemed completed at the earliest of the following times:

"(1)    When all of the work called for in your contract has been completed.

"(2)    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

"(3)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

"Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."

## DISCUSSION

### A.    Standard of Review and Rules of Interpretation

"'""When determining whether a particular policy provides a potential for coverage . . . , we are guided by the principle that interpretation of an insurance policy is a question of law.  [Citation.]"  [Citation.]'  (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390 [33 Cal.Rptr.3d 562, 118 P.3d 589].)  '"We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy."  [Citations.]'  (*Ibid.*)"  (*Federal Ins. Co. v. Steadfast Ins. Co.* (2012) 209 Cal.App.4th 668, 679.)

11

"'In reviewing de novo a superior court's summary adjudication order in a dispute over the interpretation of the provisions of a policy of insurance, the reviewing court applies settled rules governing the interpretation of insurance contracts . . . . [¶] "'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.' [Citation.] 'Such intent is to be inferred, if possible, solely from the written provisions of the contract.' [Citation.] 'If contractual language is clear and explicit, it governs.' [Citation.]" [Citation.]' (*Powerine Oil Co., Inc. v. Superior Court, supra,* 37 Cal.4th at p. 390, accord, *TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27 [50 Cal.Rptr.3d 597, 145 P.3d 472].)" (*Federal Ins. Co. v. Steadfast Ins. Co., supra,* 209 Cal.App.4th at p. 679.)

## B.     General Principles

"[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081.) Whether an insurer owes its insured a duty to defend is made, in the first instance, by comparing the allegations in the complaint with the terms of the policy. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 26.) If there is no potential for coverage under an insurance policy's terms, an insurer acts properly in denying a defense. (*Ibid.*) If there is any doubt about whether there is a duty to defend, the matter is resolved in the insured's favor. (*Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th at p. 1081.) The duty to defend is broader than the duty to indemnify. (*Ibid.*) An insurer's duty to indemnify extends to claims that are actually covered by the policy. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 45-46; *Risely v. Interinsurance Exchange of the Automobile Club* (2010) 183 Cal.App.4th 196, 208.) The duty to indemnify arises only after liability has been established. (*Buss v. Superior Court, supra,* 16 Cal.4th at p. 46.)

12

C.     **Application of Relevant Principles**

1.     *The Gomezes' Food Truck Was "Mobile Equipment" and Thus Not Within the Auto Exclusion in the Travelers Primary CGL Policy*

American States argues that the trial court erred in holding that the Gomezes' food truck was an "auto" and not "mobile equipment" under the Travelers Primary CGL Policy.  Because the primary purpose of the Gomezes' food truck was to serve as a mobile kitchen and not to transport persons or cargo, the trial court erred.

The Travelers Primary CGL Policy had an "auto" exclusion.  The definition of an "auto" under the policy, and thus the auto exclusion, contained an exception for "mobile equipment."  The policy defines "mobile equipment" as including vehicles "maintained primarily for purposes other than the transportation of persons or cargo."  Thus, if a vehicle was maintained primarily for purposes other than the transportation of persons or cargo, that vehicle was mobile equipment and not subject to the auto exception in the Travelers Primary CGL Policy.[6]

Under a plain reading of the Travelers Primary CGL Policy, the Gomezes' food truck was "mobile equipment" and not an "auto."  The primary purpose of the Gomezes' food truck was to serve as a mobile kitchen and not to transport persons or cargo.  (See *Employers Mutual Casualty Company v. Bonilla* (5th Cir. 2010) 613 F.3d 512, 518 ["The 'inherent purpose' of a mobile catering truck certainly could be seen as including the use and maintenance of its kitchen facilities . . ."].)  For the first two hours of the day, the Gomezes cooked food in their food truck while parked in the Royal parking lot.  During the next eight hours, the Gomezes made 12 to 13 stops to cook, or at least heat, and sell food.  During those stops, the food truck was not "transporting" anything, but was

---

[6]     See McKenzie et al., 15 La. Civ. L. Treatise, Insurance Law & Practice (4th ed. 2013) § 6:10 ["The commercial liability policy generally distinguishes an 'auto' from 'mobile equipment.'  The policy definition of 'auto' expressly excepts 'mobile equipment.'  Therefore, the policy exclusion for liability arising out of the ownership, maintenance and use of automobiles is not applicable to mobile equipment"].  (Fns. omitted.)

immobile. The food truck had only two seats and only two seatbelts, and the truck was not equipped to transport persons other than a driver and a cook.

In *Alpine Ins. Co. v. Planchon* (1999) 72 Cal.App.4th 1316, the court held that substantial evidence supported a trial court's finding that a standard pickup truck that had been modified with a hydraulic scissors lift, a device used to raise and lower a certain container, was maintained primarily for purposes other than the transportation of persons or cargo. (*Id.* at pp. 1318, 1324.) The court said that such a determination ordinarily is treated as a question of fact, but noted in dicta that the purpose for which a vehicle is maintained may be so apparent that it can be characterized as a matter of law. (*Id.* at pp. 1322-1323, & fn. 7.) The court explained, "The point is easily illustrated by fire trucks. Because they have the power of self-propulsion and are designed for travel on the public roads, they might appear to meet the definition of 'auto.' But they obviously fall within the same provision relied upon by defendants—'Vehicles . . . maintained primarily for purposes other than the transportation of persons or cargo.' A secondary purpose of a hook-and-ladder truck is transportation of persons, i.e., and the firefighters who drive, steer, and man it. The truck's primary purpose, design, and use become clear only when that truck arrives at the scene of a fire. The essence of that massive machinery is the ladder, which can elevate firefighters to heights where high-rise blazes may be fought and lives may be saved. The truck has no real function apart from serving as a mobile platform for that ladder. Or consider the ordinary pumper. It too transports persons and cargo. But not until its hoses are connected and its pumping apparatus is engaged does its core functional identity emerge." (*Id.* at p. 1323, fn. 7.)

The court's discussion in *Alpine Ins. Co. v. Planchon, supra,* 72 Cal.App.4th 1316 of the primary purpose of fire trucks and "ordinary pumpers" is useful here. Like a fire truck, a secondary purpose of the Gomezes' food truck was the transportation of persons—i.e., the driver and the cook. Like an "ordinary pumper" a food truck may transport persons and cargo—i.e., food, but its "core functional identity emerge[s]" (*id.* at p. 1323, fn. 7) when it operates as a mobile kitchen at specified locations.

14

Apart from the specific inclusion of vehicles "maintained primarily for purposes other than the transportation of persons or cargo" within the Travelers Primary CGL Policy's definition of "mobile equipment," other language in the definition supports the conclusion that the Gomezes' food truck was "mobile equipment" and not an "auto." The definition specifically identified the following special use vehicles with certain types of permanently attached equipment, when self-propelled, it "considered" as "autos": "(1) Equipment designed primarily for: [¶] (a) Snow removal; [¶] (b) Road maintenance, but not construction or resurfacing; or [¶] (c) Street cleaning; [¶] (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and [¶] (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment." Even though the Gomezes' food truck, like the identified special use vehicles, had permanently attached equipment that permitted it to perform a specialized task—i.e., cook food—Travelers did not include food trucks among the vehicles identified as "autos" and thus not subject to the "mobile equipment" exception to the auto exclusion. If Travelers had intended to exclude food trucks from coverage as "autos"—a significant consideration light of the fact that Royal maintained a fleet of food trucks and was in the business of leasing such vehicles—it would have identified them along with the other special use vehicles it identified as "autos." For the reasons stated, the trial court erred in holding that the Gomezes' food truck was an "auto" and not "mobile equipment" under the Travelers Primary CGL Policy.

2.      *The American States Policy Excluded from Coverage Bodily Injury Arising Out of Equipment Furnished in Connection with Royal's Work*

American States acknowledges that the food truck that Mr. Gomez leased from Royal met the policy definition of an "auto" under the American States Auto Policy. It further recognizes that its auto policy specifically listed the Gomezes' food truck as an insured auto. American States argues, however, that the trial court erred in holding that it, and not Travelers, had a duty to defend and indemnify Royal in the Gomez action

15

because the Gomez action was a products liability action—Royal stipulated at the arbitration to liability based on a products liability theory—and the Travelers Primary CGL Policy provided coverage for products claims while the American States Auto Policy excluded from coverage claims arising out of equipment furnished in connection with Royal's work. American States asserts that the liability in issue arose from equipment furnished in connection with Royal's "completed operations," which the American States Auto Policy excluded from coverage. We agree with American States's arguments.

At the arbitration, Royal stipulated to liability based on a products liability theory. The Travelers Primary CGL Policy provided coverage for "Products-Completed Operations." Travelers does not contend that its policy did not cover products liability claims.[7]

The American States Auto Policy contained a "Completed Operations" exclusion, which, as American States points out, in effect, excludes products liability claims. That exclusion provided:

"Completed Operations

---

[7] Under the Travelers Primary CGL Policy's definitions:
"'Products-completed operations hazard':
"a.    Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:
    "(1)    Products that are still in your physical possession; or
    "(2)    Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:
        "(a)    When all of the work called for in your contract has been completed.
        "(b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
        "(c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
        "Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."

16

"'Bodily injury' or 'property damage' arising out of your work after that work has been completed or abandoned.

"In this exclusion, your work means:

"a.      Work or operations performed by you or on your behalf; and

"b.      Materials, parts or equipment furnished in connection with such work or operations.

"Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a. or b. above.

"Your work will be deemed completed at the earliest of the following times:

"(1)      When all of the work called for in your contract has been completed.

"(2)      When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

"(3)      When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

"Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."

The "completed operations" exclusion in the American States Auto Policy excluded coverage in the Gomez action because that action claimed bodily injury arising out of Royal's work—leasing the food truck to Mr. Gomez—which work included equipment (the deep fryer basket) furnished in connection with Royal's work, and which work was, under the policy, "deemed completed" when the work was put to its intended use—i.e., when the Gomezes leased and operated the food truck equipped with the deep fryer and basket.

### 3.      *Travelers Had a Duty to Defend Royal in the Gomez Action*

Because the Travelers Primary CGL Policy covered products liability claims and the American States Auto Policy excluded from coverage claims arising out of equipment

17

furnished in connection with Royal's work, the trial court erred when it held that American States, and not Travelers, had a duty to defend and indemnify Royal in the Gomez action.

## DISPOSITION

The judgment in favor of Travelers is reversed.  The matter is remanded to the trial court to enter judgment in favor of American States, the Gomezes, and Royal on Traveler's cross-complaint against them, and in favor of American States on its complaint.  American States, the Gomezes, and Royal are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION.**


MOSK, J.

We concur:


TURNER, P. J.


MINK, J.*

---

*	Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.